**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

IN RE:                                                   <u>**MEMORANDUM OF**</u>
                                                         <u>**DECISION AND ORDER**</u>
        NW INVESTORS II, LLC                06 CV 5078 (ADS)

                Debtor.

-------------------------------------------------------X


<u>**APPEARANCES:**</u>

**SILVERMAN PERLSTEIN & ACAMPORA, LLP**
Attorneys for the Appellants David Slyman and Slyman International,
Creditors, Appellants
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
        By:    Anthony C. Acampora, Esq.
               Ronald J. Friedman, Esq.
               Robert D. Nosek, Esq.
               David J. Mahoney, Esq., of Counsel

**ZEICHNER ELLMAN & KRAUSE LLP**
Special Counsel to Neil H. Ackerman, Trustee for the Estate of
NW Investors II, LLC, Appellee
575 Lexington Avenue
New York, New York 10022
        By:    Nathan Schwed, Esq., of Counsel

**SIMPSON THACHER & BARTLETT**
Attorneys for Richard Breeden, Chapter 11 Trustee of the Bennett Funding Group
425 Lexington Avenue
New York, New York 10017-3954
        By:    James Gamble, Esq., of Counsel

**SPATT, District J.**

This case comes before the Court on an appeal filed by David Slyman ("Slyman") and Slyman International ("Slyman International") (collectively, the "appellants" or the "Slyman Creditors") from two orders of United States Bankruptcy Judge Dorothy Eisenberg. The appellants seek review of (1) an Order, dated April 27, 2006, Approving a Settlement Agreement; and (2) that part of an Order dated August 1, 2006 that, after granting reconsideration, adhered to the Bankruptcy Court's decision in the April 27, 2006 Order and makes the August 1, 2006 Order effective upon entry.

## I. BACKGROUND

The following facts are derived from the parties' briefs and the bankruptcy record on appeal, and are not in dispute unless specifically noted. Because of the clarity of the parties' submissions on this appeal, the Court has adopted much of the following facts as presented in the parties' briefs on appeal.

### A. The Debtor's Bankruptcy Case

On February 2, 2000, certain creditors who are not parties to this appeal filed an involuntary petition under Chapter 7 of the Bankruptcy Code against NW Investors II, LLC ("NW II" or the "Debtor"). Neil Wager was NW II's principal. On March 2, 2000, the Bankruptcy Court entered an order appointing Neil H. Ackerman as the Chapter 7 trustee for the estate of NW II. By proof of claim filed on May 15, 2001,

Slyman International asserted an unsecured claim against the Debtor's estate in the amount of $2,327,780.40. By proof of claim filed on May 15, 2001, Slyman himself asserted an unsecured claim in the amount of $2,000,000 against the Debtor's estate. It is undisputed that these claims were timely filed, and were not objected to by Ackerman as Trustee. In sum, the appellants filed general, unsecured claims against NW II in the aggregate amount of $4,327,780.40.

**B.    Procedural History**

By motion dated March 29, 2006, Trustee Ackerman sought the Bankruptcy Court's approval of a settlement agreement he entered into with Richard C. Breedon, the Chapter 11 trustee of The Bennett Funding Group, Inc. ("Bennett Funding"), whose bankruptcy case was pending in the United States Bankruptcy Court for the Northern District of New York (the "Settlement Agreement").

The appellants filed papers opposing the motion to approve the Settlement Agreement, but did not appear at the hearing on the motion before Judge Eisenberg held on April 25, 2006. At the hearing, the Bankruptcy Court heard arguments from those who were present and approved the Settlement Agreement. Judge Eisenberg issued an order to that effect on April 27, 2006.

On May 8, 2006, the appellants made a motion for reconsideration of the order of the Bankruptcy Court approving the Settlement Agreement. A hearing was held on July 18, 2006. By order dated August 1, 2006, the Bankruptcy Court granted the

motion for reconsideration, but ultimately adhered to her original determination that the Settlement Agreement would be approved. This appeal followed.

### C.    The Settlement Agreement

The Settlement Agreement is a result of negotiations between the Trustee for the Debtor's estate, and the Chapter 11 Trustee of Bennett Funding, and is related to the companies' competing claims for ownership of 126,657 shares of stock in a company called Mid-State Raceway ("Mid-State").

In a complicated transaction, on March 1, 1996, the Debtor purchased from Patrick R. Bennett, the principal of Bennett Funding, a promissory note issued by Standardbred Enterprises, Inc. ("Standardbred"), dated December 28, 1995, in the principal amount of $1,950,000 (the "Standardbred Note"). The Debtor raised the capital to purchase the Standardbred Note through investors. It is undisputed that the appellants did not contribute any of the funds that the Debtor used to purchase the Standardbred Note.

On or about November 1, 1996, in consideration for the Debtor's agreement to extend the due date of the Standardbred Note, Standardbred granted the Debtor a security interest in 126,657 shares of Mid-State stock. Standardbred later defaulted on the Standardbred Note, and the Debtor demanded possession of the Mid-State stock. However, the escrow agent holding the Mid-State stock refused to deliver it to the

Debtor, ostensibly because of the competing claim of ownership of the Bennett Funding Trustee.

The Bennett Funding Trustee contended that the funds used to purchase the Mid-State Stock were fraudulently transferred by Bennett from other Bennett companies, and that the Standardbred Note was a sham that Bennett used to transfer the Mid-State Stock to an entity controlled by his wife. The Bennett Trustee further contended that Wager, the Debtor's principal, was involved with Bennett in perpetrating the fraud, and that Standardbred's grant of a security interest in the Mid-State Stock to the Debtor was also a sham in furtherance of the fraud. Thus, according to the Bennett Trustee, the Debtor was not entitled to ownership of the Mid-State Stock, nor to a claim in the Bennett Bankruptcy for the amount of the Standardbred Note. Ultimately, the dispute resulted in competing claims being filed by the Debtor and Bennett Funding in each other's bankruptcy proceeding.

In an effort to resolve these competing claims, the Trustee for the Debtor's Estate and the Bennett Trustee entered into the Settlement Agreement which provided, in part, that: (1) the Debtor's estate relinquished all ownership claims to the Mid-State Stock; (2) the Mid-State Stock would be turned over to the Bennett Trustee, who could sell the stock; (3) the Debtor was permitted a non-priority, general unsecured claim in the Bennett Bankruptcy in the amount of $1,950,000; (4) the Debtor's estate was also permitted to share in a portion of the proceeds from the Bennett Trustee's

sale of the Mid-State Stock; and (5) the Bennett Trustee agreed to withdraw the Bennett Companies' $650 million claim against the Debtor in this bankruptcy case.

An issue arose with respect to the Settlement Agreement because some of the NW II investors that funded the purchase of the Standardbred Note filed claims in the Bennett Funding bankruptcy case. Although these investors gave money to NW II, it was their understanding that they were investing in Bennett Funding through the NW II purchase of the Standardbred note, and thus gravitated toward that bankruptcy proceeding.

In order to avoid any duplication of claims by NW II investors, as an additional term of the Settlement Agreement, any claims of NW II's investors who funded the purchase of the Standardbred Note that were filed in the Bennett Funding bankruptcy would be expunged from that case, and those creditors would be permitted to file late claims against the Debtor's estate in this case.

Finally, and importantly, as a condition to the Settlement Agreement the Bennett Trustee insisted that the appellants in this case, the Slyman Creditors, not receive any of the proceeds to the Debtor's estate related to the $1,950,000 claim in the Bennett Funding Bankruptcy or the sale of the Mid-State Stock. It is the position of the Bennett Funding Trustee that because the Slyman Creditors had claims that were expunged from the Bennett Funding bankruptcy, they should be precluded in this

bankruptcy from sharing in funds derived from a settlement with the Bennett Funding estate.

## II.    DISCUSSION

### A.    Standard of Review

A district court hearing an appeal from a bankruptcy court reviews that court's findings of fact under the "clearly erroneous" standard, see Fed. R. Bankr. P. 8013, while its conclusions of law are reviewed de novo.  See Vouzianas v. Ready & Pontisakos (In re Vouzianas), 259 F.3d 103, 107 (2d Cir. 2001); Bank Brussels Lambert v. Coan (In re AroChem Corp.), 176 F.3d 610, 620 (2d Cir. 1999); In re Bennett Funding Group, Inc., 146 F.3d 136, 138 (2d Cir. 1998) (citations omitted).  A District Court should not overturn a bankruptcy court's order approving a settlement agreement unless the order approving the settlement is "manifestly erroneous and a clear abuse of discretion."  In re Ashford Hotels, Ltd., 235 B.R. 734, 739 (S.D.N.Y. 1999).

### B.    As to the Issues Raised by this Appeal

The appellants raise two issues on this appeal.  First, they argue that it was error for the Bankruptcy Court to approve the Settlement Agreement without introduction of any evidence by the Debtor's Trustee in support of the motion.  Second, the appellants argue that the Bankruptcy Court's approval of that part of the Settlement Agreement that precluded the distribution to the Slyman Creditors of any

proceeds realized by the Debtors' estate from their $1,950,000 claim in the Bennett

Funding Bankruptcy or from the sale of the Mid-State Stock violates the distribution

provisions set forth in 11 U.S.C. § 726.

### 1. As to the Issue of Evidence

The first question to be determined is whether the Bankruptcy Court was

required to take evidence and make additional factual findings with respect the factors

the Court must consider before approving a Settlement Agreement. The appellants

argue that it was an abuse of discretion to approve the Settlement Agreement in the

absence of documentary or testimonial evidence establishing the value of the Mid-

State Stock and the propriety of the Bennett Trustee's $650,000,000 claim in this case.

In this regard, the appellants contend that at the hearing the Bankruptcy Court

improperly deferred to the statements of counsel and the Trustee in concluding that

approval of the Settlement Agreement was in the best interest of the Debtor's estate.

The Bankruptcy Court's authority to approve a settlement agreement is found

in Bankruptcy Rule 9019. That rule provides that "[o]n motion by the trustee and

after notice and a hearing, the court may approve a compromise or settlement. Notice

shall be given to creditors, the United States trustee, the debtor, and indenture trustees

as provided in Rule 2002 and to any other entity as the court may direct." Bankr. R.

9019(a). When presented with the question of whether to approve a proposed

settlement, the Bankruptcy Court must make an "informed and independent judgment

as to whether a proposed compromise is fair and equitable" after apprising itself of "all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." TMT Trailer Ferry, Inc., 390 U.S. 414, 424, 88 S. Ct. 1157, 1157, 20 L. Ed. 2d 1 (1968); see also In re Telcar Group, Inc., 363 B.R. 345, 352 (Bkrtcy. E.D.N.Y. 2007).

The Second Circuit recently had an opportunity to review the factors for approval of a settlement under Rule 9019. The Court should consider:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment,; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement"; (4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors; and (7) "the extent to which the settlement is the product of arm's length bargaining."

In re Iridium Operating LLC, 478 F.3d 452, 461-62 (2d Cir. 2007) (quoting In re WorldCom, Inc., 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)); see also TMT Trailer Ferry, Inc., 390 U.S. at 424, 88 S. Ct. at 1157; In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 292 (2d Cir. 1992).

However, "[i]t is not necessary for the bankruptcy court to conduct a 'mini trial' on the issue." In re WorldCom, Inc. 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)

(citing <u>Lambert Brussels Assocs. Ltd. Partnership v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)</u>, 140 B.R. 347, 349 (S.D.N.Y.1992)). "The Court need only 'canvass the issues' to determine if the 'settlement falls below the lowest point in the range of reasonableness.' " <u>Id.</u> (quoting <u>In re Teltronics Serv., Inc.</u>, 762 F.2d 185, 189 (2d Cir. 1985)); <u>see also</u> <u>In re Telcar Group, Inc.</u>, 363 B.R. at 352. The Court may give weight to the opinions of the Trustee, the parties, and their attorneys, and may consider the principals' belief that the relevant factors have been considered and that the settlement is fair and reasonable. <u>In re Drexel Burnham Lambert Group, Inc.</u>, 134 B.R. 493, 496-97 (Bankr. S.D.N.Y. 1991) (citations omitted); <u>Official Comm. of Unsecured Creditors of Int't Distribution Ctrs., Inc. v. James Talcott, Inc. (In re Int'l Distribution Ctrs., Inc.)</u>, 103 B.R. 420, 422-23 (S.D.N.Y. 1989) (citations omitted).

At the hearing on the appellants' motion for reconsideration, the Bankruptcy Court stated the following:

> THE COURT: And what I am here to decide is whether to accept this settlement which requires as a condition that your clients not be paid out of this money, and whether to accept it or to reject it and take the risk, and have the estate take the risk of overcoming all of the objections of the Bennett estate, and succeeding a hundred percent in gaining maybe the equivalent of what they're getting right now.

> MR. ACKERMAN: Less.

> THE COURT: Or less, and it doesn't seem to me to make much sense to do that because there wouldn't -- after the attorneys fees, et cetera,

there would be very much to pay your client and the other creditors at all.

．．．．

THE COURT: It seems to me clearer to me now that this claim -- this settlement under Rule 9019 should be approved as in the best interest of this estate, and the alternative would not be in the best interest of this estate. There would be a major claim filed by the Bennett estate. There would be major litigation that would have to take place and there is a very good possibility that the estate would receive nothing, and even if they were successful, they would receive very little and still have a large claim of $650 million, which would at least water down the Slyman claim to almost nothing.

(Tr. dated July 18, 2006, at 35, 37). In this Court's view, these findings are sufficient to support the Bankruptcy Court's conclusion that the Settlement Agreement is in the best interest of the Estate and should be approved.

The Bankruptcy Court "canvassed" the issues, In re WorldCom, Inc. 347 B.R. 123 at 137, and determined that the benefits to the Debtor's estate from the Settlement Agreement outweighed any reward the estate could have obtained through further litigation with the Bennett Trustee. Although it is evident that the Bankruptcy Court did defer to the opinions of the Trustee and counsel present at the hearing, the appellants did not provide any authority suggesting it was improper to do so. In re Drexel Burnham Lambert Group, Inc., 134 B.R. at 496-97.

As noted by the appellees, the hearing conducted on July 18, 2006 was devoted entirely to the appellants' objections to the Settlement Agreement. The Bankruptcy Court engaged in extensive discussion regarding the advantages and disadvantages of

11

the Settlement for the estate, and did not merely "rubber-stamp" the agreement. At the hearing, the parties agreed that there probably are no other assets to be distributed to the Debtor's creditors other than the potential recovery from the Bennett Estate. The Bankruptcy Court found that if it did not approve the Settlement Agreement, the Estate could potentially recover the same amount or possibly less, but only after complicated litigation, and that any such recovery would likely be extinguished by the Bennett Trustee's substantial claim against the Estate.

These findings adequately take into account several of the factors identified by TMT Trailer and its progeny, namely, the important factors of the litigation's possibility of success and the settlement's future benefits, the likelihood of complex litigation, and the best interests of the creditors. See TMT Trailer Ferry, Inc., 390 U.S. 414, 424, 88 S. Ct. 1157, 1157, 20 L. Ed. 2d 1 (1968); In re WorldCom, Inc., 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006). In addition, of the thirty-two creditors who filed claims against the Debtor's estate, the appellants are the only creditors to object to the Settlement Agreement. See In re Hibbard Brown & Co., 217 B.R. 41, 46-47 (Bankr. S.D.N.Y. 1998) ("[T]he favorable reception of the [settlement] by the majority of the Bankruptcy Class is further evidence of its fairness.").

Although the appellants are correct that in the cases they cite the Court did consider some evidence such as affidavits, they did not direct the Court to any case either declining to approve a settlement for lack of evidence, or finding that it was

error for a Bankruptcy Court to approve a compromise without first having received evidence. Cf. In re Spielfogel, 211 B.R. 133, 144 (E.D.N.Y. 1997) ("Because a bankruptcy judge need only canvass the issues and does not determine and rule upon disputed facts and questions of law, a trial or 'mini trial' on the merits is not required.") (citations omitted).

The case cited by the appellants that is most helpful to them is LaSalle Nat'l Bank v. Holland (In re Am. Reserve Corp.), 841 F.2d 159 (7th Cir. 1987). In that case, the Seventh Circuit reversed the approval of a settlement agreement and remanded the case with instructions to make further findings. According to the Seventh Circuit, the bankruptcy judge accepted the trustee's opinion on litigation costs without any evidence as to what the litigation costs would be, and without explaining why he accepted the trustee's testimony that the litigation costs would exceed the settlement. Id. at 162. The Court stated that "the record [was] replete with statement by the bankruptcy judge that the trustee considered factors such as expense and litigation risks, but does not contain any indication that the judge independently evaluated those or other relevant factors." Id. The primary concern in LaSalle was that the Bankruptcy Court appeared not to have conducted its own evaluation of the relevant factors and did not explain why it was crediting the Trustee's opinion.

In the present case, this Court finds that the transcript of the July 18, 2006 hearing provides enough information to satisfy the Court that the Bankruptcy Court

independently examined the appropriate factors and made an informed and independent judgment with regard to the appropriateness of the settlement. In sum, the Court cannot say that the Bankruptcy Court abused its discretion in approving the Settlement Agreement based on the representations in the papers and at the hearings on the Trustee's motion to approve the settlement.

### 2. As to the Issue of an Impermissible Subclass of Creditors

Section 726 of the Bankruptcy Code provides, in part, that:

Except as provided in section 510 of this title, property of the estate shall be distributed—

> (1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title, proof of which is timely filed under section 501 of this title . . .

> (2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—

> (A) timely filed under section 501(a) of this title.

11 U.S.C. § 726(a). The appellants' claims against the Debtor's estate fall under Section 726(a)(2), which are general unsecured claims. Under Section 726(b), all general unsecured claimants are required to be paid from the estate on a pro rata basis if there are insufficient funds to pay the claimants in that class in full. 11 U.S.C. § 726(b); 6 Collier on Bankruptcy, §§ 726.02-.03 (15 Ed. rev. 2007). There are,

however, circumstances under which the Bankruptcy Court can deviate from the distribution requirements of the Code.  See, e.g., 11 U.S.C. § 510 ("Subordination").

The appellants argue that, by approving the Settlement Agreement, the Bankruptcy Court violated the priority and distribution rules in Section 726 of the Bankruptcy Code by improperly creating a subclass within the class of the general creditors:  one class that will share in the proceeds of the settlement with the Bennett Funding estate, and another class consisting of the Slyman Creditors, who will not share in the Bennett Funding distributions.  Thus, according to the appellants, the terms of the Settlement Agreement denying them a share in the proceeds of the Bennett Funding Settlement improperly denies them their pro rata share of the assets of the estate in violation of Section 726(b).

None of the cases cited by either party on this appeal shed any light on the propriety of the Bankruptcy Court's approval of a Settlement Agreement that would deny one group of creditors from sharing in proceeds that other creditors in the same class will receive.  The Court has found some authority for the proposition that the parties in a bankruptcy case cannot deviate from the distribution scheme in the Bankruptcy Code by private agreement.  See In re Robotic Vision Sys., Inc., Nos. NH 05-047, 04-14151-JMD, 2006 WL 929322, at **3-4 (B.A.P. 1st Cir. Apr. 11, 2006) (unreported); In re CGE Shattuck, LLC, 254 B.R. 5, 11 (Bankr. D.N.H. 2000); In re Goffena, 175 B.R. 386, 390-92 (Bankr. D. Mont. 1994).

Unfortunately, the Bankruptcy Court did not make any specific findings with regard to the appellants' argument that the Settlement Agreement violates the distribution provisions of Section 726.  The appellants raised this argument in their papers objecting to the approval of the Settlement Agreement, and again at the hearing on their motion for reconsideration.  <u>See</u> Tr. dated July 18, 2006, at 6, 36.  Although the Bankruptcy Court obviously rejected this argument, the Court did not articulate its reasons for doing so.  In the absence of any such findings, this Court is unable to properly review the Bankruptcy Court's Order.  <u>See</u> <u>In re Robotic Vision Sys., Inc.</u>, 2006 WL 929322, at *4 (unreported).  As such, this matter is respectfully remanded to the Bankruptcy Court to for further proceedings consistent with this opinion.

III.    **CONCLUSION**

Based on the foregoing, it is hereby

**ORDERED**, that the order of the bankruptcy court, dated August 1, 2006, is vacated, and the case is remanded to the Bankruptcy Court for further consideration; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case.

**SO ORDERED**.

Dated: Central Islip, New York
          July 30, 2007

        _/s/ Arthur D. Spatt_
          ARTHUR D. SPATT
        United States District Judge

16